UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RENE D. MEYER,<br><br>Plaintiff,<br><br>vs.<br><br>JUDGE CRAIG A. PFEIFLE, JUDGE MATTHEW M. BROWN, JUDGE HEIDI LINNGREN, CITY OF RAPID CITY, PENNINGTON COUNTY, PENNINGTON COUNTY STATES ATTORNEYS OFFICE, MARK VARGO, STATE OF SOUTH DAKOTA, ATTORNEY GENERAL, JASON RAVNSBORG,<br><br>Defendants. | 4:18-CV-04048-KES<br><br><br>ORDER GRANTING MOTIONS TO DISMISS, DENYING MOTION FOR SANCTIONS, DENYING MOTION FOR ORAL ARGUMENTS AND TO CORRECT DEFECTS, AND DENYING MOTION TO ADD DEFENDANTS |

Plaintiff, Rene D. Meyer, sued defendants alleging various violations of her civil rights and her rights as a "sovereign citizen." Docket 1 at 1. The complaint also alleges that defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and that the defendants "have conspired to take away [her] civil rights and are attempting to jail [her] for a letter." *Id.* Meyer alleges that these violations have caused harm to her reputation and impeded her ability to obtain employment opportunities. *Id.* Defendants move to dismiss under 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dockets 13, 16, 18, and 20. Meyer opposes the motions. Docket 24. Following each defendant moving to dismiss, Meyer made a motion for oral argument and

to correct defects in the case (Docket 37) and a motion to add defendants (Docket 35). For the following reasons, defendants' motions to dismiss are granted, and Meyer's motions are denied.

## BACKGROUND

Meyer filed this *pro se* complaint on May 3, 2018, naming defendants, Judge Craig Pfeifle, Judge Matthew Brown, Judge Heidi Linngren, the City of Rapid City, Pennington County, the Pennington County State's Attorney Office, Mark Vargo, the State of South Dakota, the Office of the Attorney General, and Marty Jackley, and alleging various violations of her civil rights and RICO. Docket 1. Jason Ravnsborg, in his official capacity, was substituted as the named defendant in lieu of Attorney General Marty Jackley, in his official capacity. Docket 39.

Meyer's allegations stem from two criminal proceedings against her and her divorce proceeding all in the Seventh Judicial Circuit in Pennington County. Docket 17 at 2. One case is a pending criminal matter charging Meyer with two counts of forgery and attempted grand theft that alleges Meyer forged an invoice and letter from the City of Rapid City. *Id.* The other criminal case charged Meyer with second degree theft and intentional damage to property, but this case was later dismissed by the prosecutor. *Id.* Finally, a judgment and decree of divorce was filed December 20, 2017, in Meyer's divorce proceeding. *Id.* Meyer alleges that "[t]he reason all of the defendants are listed is they all have a part to play in the corruption of the judicial system to undermine the people and to use statutes to control the people instead of doing

what they are supposed to do and that is to represent the people and a system

of fairness." Docket 1 at 9.  Meyer states that the Pennington County States

Attorneys Office and Mark Vargo "are the direct adversary in court and helps

represent the state" and that the defendants "all work together with the judges

to control the outcome of cases." *Id.* Meyer alleges that "[t]he three judges are

listed because both made decisions on the cases against me and one is pending

and on going [sic]. . . ." *Id.* Apart from presiding over a case, Meyer alleges that

Judge Linngren "spied on her" at a luncheon in Rapid City. *Id.* at 2.

Meyer also alleges that an incident occurred on June 25, 2016, when the

Rapid City police department allegedly raided Meyer's boyfriend's home. *Id.* at

3. Meyer suggests that the City of Rapid City "is just covering up their crimes

by bringing felony charges against me." *Id.* at 4. She claims that the State of

South Dakota is "a business and fictional entity." *Id.* at 5. Meyer alleges

damages in the amount of $ 9,789,752 and that all damages are "linked to my

divorce and my ex-husband and all the judges and police he has used to help

him harass me." *Id.* at 35-37.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Inferences are construed in favor of the non-moving party. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this standard, a pro se complaint must "allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to "supply additional facts, nor will [it] construct a legal theory . . . that assumes facts that have not been pleaded." *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *see also Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## DISCUSSION

### I.    Pennington County, Pennington County State's Attorney Office, and Mark Vargo

Pennington County defendants move to dismiss Meyer's claims under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted. Docket 16. Meyer opposes the motion. Docket 24. When reviewing a

motion to dismiss under Rule 12(b)(6), the court assumes that all facts in the

complaint are true and construes any reasonable inferences from those facts in

the light most favorable to the nonmoving party. *See Matsushita Elec. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citation omitted).

#### A.    § 1983 Claim

Meyer alleges that the parties have conspired to take away her civil rights

under "the Constitution, and the State of South Dakota Constitution." Docket 1

at 1, 3. Because Meyer's claims involve allegations of the deprivation of civil

rights, it is fair to construe her claim as a possible cause of action under

42 U.S.C. § 1983. *Id.* at 3. "Section 1983 creates a species of tort liability for

the deprivation of any rights, privileges, or immunities secured by the

Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (internal

citation omitted). "The essential elements of a constitutional claim under

§ 1983 are (1) that the defendant acted under color of state law, and (2) that

the alleged wrongful conduct deprived the plaintiff of a constitutionally

protected federal right." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis*, 673 F.3d

799, 805 (8th Cir. 2012) (citing *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)).

The Supreme Court held in *Monell v. Department of Social Services* that while municipalities can be sued under § 1983, a plaintiff must show a constitutional right violation was caused by an official policy or widespread custom. 436 U.S. 658, 690-95 (1978). "[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122-23 (8th Cir. 2018) (citing *Monell*, 436 U.S. at 691). Thus, a governmental entity is liable under § 1983 "only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or custom' must have 'caused' the constitutional violation . . . ." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

To establish governmental liability under *Monell*, a plaintiff must allege facts to support a finding of a continuing, widespread pattern of unconstitutional conduct, deliberate indifference or tacit authorization by the entity's policymaking officials, and injury suffered by the plaintiff due to this custom. *Thelma D. By and Through Delores A. v. Bd. of Educ. of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991) (citing *Jane Doe "A" By and Through Jane Doe "B" v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 646 (8th Cir. 1990)). This rule "was intended to distinguish acts of the [governmental entity] from

acts of employees of the [governmental entity], and thereby make clear that [governmental] liability is limited to action for which the [governmental entity] is actually responsible." *Thompson v. Shock*, 852 F.3d 786, 793 (8th Cir. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

First, Meyer's complaint fails to allege that Meyer was deprived of any constitutional right. Aside from the fact that her three court cases were venued in Pennington County and the two criminal matters were prosecuted by the Pennington County State's Attorney Office, Meyer fails to plead any facts that support a constitutional deprivation by these parties. Second, Meyer fails to allege any custom or policy of Pennington County that led to a violation of her constitutional rights. Pennington County acts through its county commissioners who do not direct what cases should be prosecuted by the Pennington County State's Attorney Office. The county has no policies or customs that would direct Vargo as the Pennington County State's Attorney as to what charges should be brought, dismissed, or reduced. Because Meyer fails to allege a constitutional violation and fails to allege facts that would support the existence of an unconstitutional policy or custom, Meyer's complaint fails to state a claim against Pennington County or the Pennington County State's Attorney Office.

"If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Artis v. Francis Howell North Band Booster Ass'n,* 161 F.3d 1178, 1182 (8th Cir. 1998). Meyer fails to express in what capacity Vargo is sued. Thus, he is presumed to be sued in his official capacity. Prosecutors like Vargo who are sued under § 1983 may be entitled to either absolute or qualified immunity. *Kalina v. Fletcher,* 522 U.S. 118, 123-26 (1997). The type of immunity depends on the function the prosecutor was performing during the alleged misconduct. *Id.* at 127. Prosecutors have absolute immunity for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). For example, "[p]rosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Sample v. City of Woodbury,* 836 F.3d 913, 916 (8th Cir. 2016) (citing *Imbler,* 424 U.S. at 420-427). For other functions, like investigative or administrative functions, prosecutors only have qualified immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993).

Meyer alleges that "Mark Vargo [sic] in charge of this office." Docket 1 at 9. She also alleges that the Pennington County State's Attorney is "a direct adversary in court and helps represent the state." *Id.* Although it is hard to decipher what other allegations apply to Vargo, Meyer's central complaints concerning her two criminal cases and her divorce case appear to concern Vargo's actions "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. Vargo's decision to indict is protected by

absolute immunity. *Buckley*, 509 U.S. at 274 n.5. Thus, because any decisions by Vargo in Meyer's criminal cases were intimately associated with the judicial process, his actions are protected by absolute immunity.

Meyer fails to state a § 1983 claim upon which relief can be granted against Mark Vargo, Pennington County, or the Pennington County State's Attorney Office.

### B.    Conspiracy claims - RICO and § 1983

It is unclear whether Meyer alleges conspiracy claims against the defendants under § 1983 and the RICO Act or just the RICO Act. First, Meyer alleges that the defendants' "violations fall under the RICO ACT . . . ." Docket 1 at 3. Meyer alleges that the South Dakota bar association "violates the RICO ACT, it's a club. The judge, the states attorney, the attorney general, the county and state all work together to get convictions and align against the accused." *Id.* at 7. Meyer also alleges that "its a Kangaroo Court. It is a violation of [her] Civil Rights and violates the Constitution and also my rights as a sovereign." *Id.* Meyer alleges that Pennington County, the Pennington County State's Attorney Office, and Mark Vargo "all work together with the judges to control the outcome of cases." *Id.* at 9.

The Eighth Circuit has held that in order to plead a RICO conspiracy claim, a plaintiff must allege that (1) an enterprise existed; (2) the enterprise affected interstate or foreign commerce; (3) the defendants were associated with the enterprise; (4) the defendants participated, directly or indirectly, in the conduct of the enterprise; and (5) the defendants participated in the enterprise

through a pattern of racketeering activity by committing at least two racketeering acts. *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017) (footnote omitted) (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)). Each element must be alleged to state a valid claim. *See, e.g., Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354-56 (8th Cir. 2011). A complaint that "is awash in phrases such as 'ongoing scheme,' 'pattern of racketeering,' and 'participation in a fraudulent scheme,' without more, . . . [is] insufficient to form the basis of a RICO claim." *Id.* at 356.

To the extent Meyer's pleadings can be construed as a conspiracy claim under § 1983, the pleading standard is also heightened. To plead a civil conspiracy under § 1983, Meyer must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 or RICO conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or meeting of the minds. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Thus, Meyer must allege with particularity

"facts that the defendants reached an agreement." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 582 (8th Cir. 2006) (internal quotation omitted). A plaintiff must plead "more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy." *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir. 1987) (*overruled on other grounds by Burns v. Reed*, 500 U.S. 478 (1991)). A "belief that a crime has been committed is not a conspiracy. Various people engaged in investigating . . . suspected criminal activity does not amount to conspiracy. [Courts] look for a genuine factual issue of concerted activity toward an unlawful objective." *Id.* at 1454.

Meyer's complaint fails to properly allege any element of a RICO violation or civil conspiracy. Instead, Meyer presents non-specific conclusory statements about the entire judicial and governmental systems being rigged against her. Much of Meyer's complaint is citations to legal authority and conclusions with no reference to the necessary elements of a RICO or civil conspiracy claim. Meyer's pleadings fail to allege specific facts that would give rise to the inference of the existence of a conspiracy or meeting of the minds between the judges, city, county entities, or state actors. Her allegation that "courts have been incorporated so that they can subvert our constitutional rights" fails to allege that a bar association or legal system is a form of racketeering activity. Docket 1 at 4. Instead Meyer's claims are "naked assertions devoid of further factual enhancement," and are thus insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although Meyer believes individuals have conspired against her, her allegations, supported by mere

conclusory statements, are not enough. Thus, Meyer fails to state a RICO or § 1983 conspiracy claim against Pennington County, the Pennington County State's Attorney Office, and Mark Vargo.

### C.    Sovereign Citizen Claim

Finally, Meyer makes a variety of sovereign citizen claims. Docket 1 at 1. Meyer suggests that "from the beginning of this kangaroo court" she does not "accept this offer to contract and [she does] not consent to these proceedings." *Id.* at 7. Meyer alleges that this "kangaroo court" violates her "rights as a sovereign." *Id.* Meyer notes that "only Gods law applies to Sovereign Citizens." *Id.* Meyer argues that all other statutes and laws are statutes of a fictional entity that do not apply to her. *Id.*

The Eighth Circuit has repeatedly rejected a "sovereign citizen" claim as frivolous. *See United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (referring to the sovereign citizen argument as "completely without merit, patently frivolous and . . . rejected without expending any more of this Court's resources . . . ."); *see also United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983) (rejecting "sovereign citizen" as a status). Thus, Meyer's allegations regarding rights as a "sovereign citizen" are frivolous and fail to state a claim.

### D.    Monetary Damages

Finally, Meyer alleges damages in the amount of $ 9,789,752 are "linked to [her] divorce and [her] ex-husband and all the judges and police he has used to help him harass [her]." Docket 1 at 35-37. This monetary damages claim could be construed as Meyer requesting the court to overturn the state court

judgments in Pennington County. The *Rooker-Feldman* doctrine bars attempts by parties to undermine state court decisions. The doctrine recognizes that district courts, with the exception of habeas corpus petitions, "lack subject matter jurisdiction over challenges to state court judgments." *Ace Constr. v. City of St. Louis*, 263 F.3d 831, 832-33 (8th Cir. 2001) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). Federal constitutional claims, like claims under 42 U.S.C. § 1983, are "inextricably intertwined" with a state court judgment if the federal claim only succeeds "to the extent that the state court wrongly decided the issue." *Id.* at 833. The *Rooker-Feldman* doctrine most often applies in cases where the individual who lost in state court complains of injuries caused by the judgment before a federal district court. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 285 (2005).

To the extent that Meyer requests monetary damages as a result of the judgment and decree in her divorce proceeding or her ongoing criminal proceedings in Pennington County, that claim is barred by the *Rooker-Feldman* doctrine, because this court could only grant relief if it was found that the state court proceedings were wrong.

Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914. Meyer fails to state a constitutional violation or articulate facts that suggest governmental liability. Meyer fails to state a § 1983 claim upon which relief can be granted. Meyer also fails to state a RICO claim or civil conspiracy claim.

Thus, the motion to dismiss by Pennington County, the Pennington County State's Attorney Office, and Mark Vargo (Docket 16) is granted and all claims against the three parties are dismissed.

## II.     City of Rapid City

The City of Rapid City also moves to dismiss Meyer's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Docket 18. Meyer opposes the motion. Docket 24.

As discussed above, Meyer alleges that "[t]he reason all of the defendants are listed is they all have a part to play in the corruption of the judicial system." Docket 1 at 9. But throughout her complaint, Meyer does not refer to the City of Rapid City except when she suggests that the City of Rapid City "is just covering up their crimes by bringing felony charges against me." *Id.* at 4.

The City of a Rapid City is a municipality. As was established by the Supreme Court in *Monell*, "a municipality cannot be held [vicariously] liable under 42 U.S.C. § 1983" for its employees' unconstitutional acts under a theory of respondeat superior. *Monell*, 436 U.S. at 691. Local governments like the City of Rapid City may be sued under § 1983 for the existence of an unconstitutional governmental custom or policy. *Id.* at 690. Meyer is held to the same pleading standard and elements against Rapid City as was discussed against the county defendants.  *See Jane Doe "A"*, 901 F.2d at 646.

Meyer fails to state a cause of action against the City of Rapid City. Meyer has not identified a Rapid City custom or policy that has caused any constitutional violation. Meyer fails to allege facts showing that a City of Rapid

City policy or custom was the "moving force" behind the alleged constitutional deprivations. Meyer's conclusory allegations do not include any facts that articulate the existence of an unconstitutional policy or custom of Rapid City. Thus, Meyer has failed to state a § 1983 claim against the City of Rapid City.

Also, for the same reasons discussed above, Meyer's complaint fails to properly allege any element of a RICO violation or widespread civil conspiracy under § 1983 on behalf of the City of Rapid City. Although a pro se complaint is liberally construed, it still must allege sufficient facts to support a claim. *Stone*, 364 F.3d at 914. Thus, the City of Rapid City's motion to dismiss (Docket 18) is granted, and all claims against the City are dismissed.

### III.    Judge Pfeifle, Judge Brown, and Judge Linngren

Judge Pfeifle, Judge Brown, and Judge Linngren move for dismissal of Meyer's claims based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Docket 13 at 1. Judge Pfeifle, Judge Brown, and Judge Linngren argue that they possess absolute judicial immunity and, additionally, the claims against them are barred by the Eleventh Amendment of the United States Constitution. *Id.* Meyer opposes the motion. Docket 24.

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial

15

jurisdiction[.]" *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "A judge is absolutely immune from liability if (1) the judge had subject matter jurisdiction, and (2) the acts complained of were judicial acts." *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (citations omitted). To determine whether an act is judicial, a court considers the "nature of the function performed." *Forrester v. White*, 484 U.S. 219, 229 (1988). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982) (citations omitted). As the Supreme Court made clear in *Pierson*, judicial immunity applies even when a plaintiff accuses a judge of acting with malicious intent or being corrupt. 386 U.S. at 554.

The South Dakota Constitution provides that "circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature." S.D. Const. Art. V, § 5. Judge Pfeifle, Judge Brown, and Judge Linngren are full-time circuit court judges in judgeships created and authorized by the South Dakota legislature. *Id.* Here, there is no question that the actions complained of by Meyer included those normally performed by a judge and that they were done by Judge Pfeifle, Judge Brown, and Judge Linngren in their judicial capacity. Meyer states that the "the three judges are listed because both made decisions on the case against me, and one is pending and ongoing in the Pennington County Courthouse." Docket 1 at 9.

Each judge had subject matter jurisdiction over Meyer's respective case. *See* S.D. Const., Art. V, § 5. The three judges had contact with Meyer only because they were the judges assigned to hear and determine the criminal or divorce case against her. Thus, because the alleged violations of Meyer's constitutional rights relate to the judges exercising jurisdiction in the Seventh Circuit, Judge Pfeifle, Judge Brown, and Judge Linngren are entitled to absolute judicial immunity

Finally, other than presiding over her cases, Meyer alleges that Judge Linngren "spied on her" at a "women in business" lunch in Rapid City. Docket 1 at 2. Although judicial immunity does not apply to acts that are non-judicial in nature, like attending luncheons, Meyer has failed to state a claim against Judge Linngren upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Meyer fails to plead any facts as to how Judge Linngren attending a luncheon harmed her or the legal authority to support such a claim. Thus, the claim against Judge Linngren for attending a luncheon is dismissed for failure to state a claim.

Because Judge Pfeifle, Judge Brown, and Judge Linngren are entitled to judicial immunity, this court has no subject matter jurisdiction to determine Meyer's claims against them. Also, Meyer's sole non-judicial claim against Judge Linngren is dismissed for failure to state a claim. Thus, the motion to

dismiss by Judge Pfeifle, Judge Brown, and Judge Linngren (Docket 13) is granted and all claims against the three judges are dismissed.

## IV. State of South Dakota, Office of the Attorney General, and Jason Ravnsborg

### A. Motion to Dismiss

The State of South Dakota, Office of the Attorney General, and Attorney General Jason Ravnsborg also move to dismiss Meyer's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Docket 20 at 1. Specifically, these defendants argue that Meyer's claims should be dismissed under the Eleventh Amendment. Docket 21 at 2. Meyer opposes their motion. Docket 24.

As discussed at length above, Meyer makes a variety of allegations against all named defendants including a § 1983 claim, civil conspiracy claim, RICO claim, and sovereign citizen claim. Docket 1. Meyer alleges that the state of South Dakota is the plaintiff captioned in Meyer's pending court cases. *Id.* at 6. Meyer also alleges that the state of South Dakota "is also a business and a fictional entity." *Id.* at 5. Finally, Meyer alleges that the South Dakota Attorney General's Office and the attorney general "controls all the courts below him and he also represents the state." *Id.* at 6.

The Eleventh Amendment generally bars claims brought against a state, state agency, or state officials in their official capacities unless Congress has abrogated the state's immunity, or the state has expressly waived its immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *see also Christensen v. Quinn*, 45 F. Supp. 3d 1043, 1059 (D.S.D 2014). Congress must

18

make its intention to abrogate the states' constitutionally secured immunity "unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985). 42 U.S.C. § 1983 did not abrogate immunity under the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332 (1979); *see also Larson v. Kempker*, 414 F.3d 936, 939 n.3 (8th Cir. 2005). Congress has also not expressed a clear intention to abrogate the states' immunity rights from claims brought under RICO. *See McMaster v. Minnesota*, 819 F. Supp. 1429, 1434 (D. Minn. 1993), *aff'd*, 30 F.3d 976 (8th Cir. 1994).

Also, "Eleventh Amendment immunity bars a § 1983 lawsuit against a state agency or state official in official capacity." *Kempker*, 414 F.3d at 939 n.3. "The Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" *Trevelen v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996) (citation omitted). "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

Here, Meyer seeks money damages as her sole remedy. Docket 1 at 33-34. The state of South Dakota, the Office of the Attorney General, and Ravnsborg claim Eleventh Amendment immunity. Docket 20 at 1. The Office of the Attorney General is a state agency. *See* SDCL §§ 1-11-1 to -35 (establishing Office of the Attorney General as a state agency). The Eleventh Amendment bars § 1983 claims against the state and its agencies. *See Doss v. Dep't of*

*Corr.*, No. CIV. 08-04026-KES, 2008 WL 4335585, at *2 (D.S.D. Sept. 17, 2008). If a judgment against the Office of the Attorney General was rendered, the judgment would in effect be against the state of South Dakota because the funds for the judgment would come from the state treasury. Thus, the Eleventh Amendment bars Meyer's claims for money damages against the state of South Dakota and the Office of the Attorney General as a state entity.

Also, neither the state of South Dakota, the Office of the Attorney General as a state agency, or its officials acting in their official capacities such as Attorney General Ravnsborg are considered "persons" who may be sued for money damages under § 1983. Section 1983 provides a cause of action only against a "person" who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court held in *Will* that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" when sued for money damages. *Id.* None of Meyer's claims specify that they are against Ravnsborg in his personal capacity and there is nothing contained in the complaint to suggest that they are. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."); *see also Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015) (per curiam) (requiring a clear statement indicating that the plaintiffs are suing the defendants in their individual capacities). Meyer's sole claim against Ravnsborg is that "the attorney general controls all of the courts below him and

he also represents the state, And [sic] is a key peace [sic] in directing the lower courts in South Dakota so he is responsible as well." Docket 1 at 6. Meyer adds in her response that "the reason [the attorney general] is added to the list IS BECAUSE he failed to act to protect me from a corrupt judicial system and illegal process and so is his office." Docket 24 at 7 (emphasis in original). These statements suggest Meyer is suing Ravnsborg in his official capacity. Thus, section 1983 does not allow Meyer to sue Ravnsborg in his official capacity for damages.

Finally, while the Eleventh Amendment is not applicable when a plaintiff seeks prospective injunctive relief against state officers in their official capacities, the Eleventh Amendment defense does preclude prospective injunctive relief against a state and its agencies. *See Alabama v. Pugh*, 438 U.S. 781, 781-82 (1978). In her response Meyer suggests that the Eleventh Amendment does not protect state officials from claims for prospective relief. Docket 24 at 6. The state of South Dakota and the Office of the Attorney General are not state officials. Thus, they are immune under *Pugh*. 438 U.S. at 781-82. Although Ravnsborg would not be immune from prospective injunctive relief under the Eleventh Amendment, Meyer's complaint requests only monetary damages. Docket 1 at 33-34. Meyer fails to allege any request for prospective relief. Thus, as noted above, the Eleventh Amendment precludes a monetary damage claim against Ravnsborg in his official capacity.

Because the Eleventh Amendment bars all alleged claims seeking money damages against the state of South Dakota, the Office of the Attorney General,

and Attorney General Jason Ravnsborg, the court does not have subject matter jurisdiction. Also, for the same reasons discussed above, Meyer's complaint fails to properly allege any element of a RICO violation or widespread civil conspiracy under § 1983 on behalf of the state of South Dakota, the Office of the Attorney General, or Ravnsborg. Although a pro se complaint is liberally construed, it still must allege sufficient facts to support a claim. *Stone*, 364 F.3d at 914. Thus, the motion to dismiss by the state of South Dakota, the Office of the Attorney General, and Ravnsborg (Docket 20) is granted and all claims against the three parties are dismissed.

### B.     Motion for Sanctions

The state of South Dakota, Office of the Attorney General, and Jason Ravnsborg move for sanctions against Meyer under Federal Rule of Civil Procedure 11, arguing that they should be compensated for attorney's fees and costs incurred in defending this action because Meyer's claims are frivolous. Docket 27 at 1.

Under Federal Rule of Civil Procedure 11(b)(2), an attorney or unrepresented party presenting a pleading or other paper certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law[.]" Fed. R. Civ. P. 11(b)(2). Rule 11(c) provides that sanctions may be imposed against a party or attorney where a court finds that Rule 11(b) has been violated. Fed. R. Civ. P. 11(c). The

primary goal of Rule 11 sanctions is to deter litigant misconduct, "not to compensate the opposing party for all of its costs in defending." *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994). A sanction must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Although a pro se plaintiff is bound by Rule 11, the court may consider the special circumstances of a pro se case. *Myers v. Long*, No. CIV 12-4125, 2013 WL 820788, at *9 (D.S.D. Mar. 5, 2013) (citations omitted).

Meyer filed similar allegations against most of the same defendants in *Meyer v. Schroeder*, No. CIV 18-04037-KES, 2018 WL 3651354 (D.S.D. Aug. 1, 2018). While that suit was pending, Meyer filed this complaint. Although some defendants and claims are different, there is a large overlap in the assertions and parties sued by Meyer. Considering Meyer's status as a pro se plaintiff not learned in the law, the court is reluctant to impose sanctions. "[P]ro se litigants are not excused from compliance with procedural and local rules." *Smith v. Brown*, No. CIV 16-04014-LLP, 2018 WL 1440328, at *19 (D.S.D. Mar. 22, 2018). Meyers is warned that future filings against these defendants alleging the same facts contained in the complaint may result in sanctions.

## V.    Meyer's Motion for Oral Arguments, Motion to Correct Defects, and Motion to Add Defendants

After each defendant moved to dismiss, Meyer moved for oral arguments to correct defects in case (Docket 37) and to add defendants (Docket 35).

## A. Motion for Oral Arguments

The court has the discretion to order oral argument on a motion. D.S.D Civ. LR 7.1C. After considering the parties' briefs and reviewing the case law, the court finds that oral argument would not assist in determining the motions presented. Thus, Meyer's motion for oral arguments (Docket 37) is denied.

## B. Motion to Add Defendants

Meyer seeks to assert claims against new defendants, Josh Hendrickson of the Pennington County State's Attorney Office, and Meyer's court appointed counsel, Michael Wheeler. Docket 35. Meyer believes Josh Hendrickson has been the one behind unreasonable prosecution on behalf of the City of Rapid City and that her court appointed counsel is part of the conspiracy, attempting to coerce her into taking a plea deal. *Id.* The Pennington County defendants oppose the motion. Docket 40.

Motions to amend should be freely given to promote justice but may be denied when such an amendment would be futile. *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014). There is not an absolute right to amend for plaintiffs, and futility can serve as a valid basis for denying leave to amend the pleadings. *See Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010); *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). A district court may deny a motion to correct or amend based on futility if the court reaches the legal conclusion that the amendments would not withstand a motion to dismiss under 12(b)(6). *Id.* at 850. "[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended

to save the meritless claim." *Wisdom v. First Midwest Bank of Popular Bluff*, 167 F.3d 402, 409 (8th Cir. 1999) (citations omitted).

First, even if Meyer's motion was to substitute parties, the claims of the complaint would fail for the same reasons that the claims fail against the originally-named defendants as explained at length above. Meyer's sole allegation against Hendrickson is that he prosecuted her. Docket 35 at 2. As was the case for named defendant Vargo, Hendrickson cannot be sued in his official capacity due to prosecutorial immunity. *Imbler*, 424 U.S. at 431. Thus, her claims against Hendrickson are precluded because of absolute immunity. Second, Meyer fails to state a claim against her court-appointed counsel and Hendrickson. Even if Meyer seeks money damages on her § 1983 claim, civil conspiracy claim, RICO claim, or sovereign citizen claim against either Hendrickson or Wheeler as new defendants, her claims fail for the same reasons discussed above. Meyer provides no facts that would support a meeting of the minds, a constitutional right violation, or racketeering activity by Hendrickson or Wheeler. Meyer has failed to state a claim to relief that is plausible. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Because Meyer's claims cannot withstand a Rule 12(b)(6) dismissal, adding the two additional defendants would be futile. Thus, Meyer's motion to add defendants (Docket 35) in her case is denied.

### A.     Motion to Correct Defects

Meyer seeks to correct deficiencies in her complaint. Docket 37.  The Pennington County defendants oppose the motion. Docket 40. Again, a district

court may deny a motion to correct or amend based on futility if the court reaches the legal conclusion that the amendments would not withstand a motion to dismiss under 12(b)(6). *Zutz*, 601 F.3d at 850.

Meyer fails to identify what deficiencies are part of her case and how she intends to correct them. It is not clear whether Meyer's request to correct deficiencies is a request to add "the two new defendants." Docket 37 at 1. Besides the two new defendants, Meyer does not attach a copy of a proposed amended pleading as required by D.S.D. Civ. LR 15.1. Without a proposed amended pleading or a motion that identifies the proposed changes, the court cannot find a valid basis for Meyer's proposed changes. Thus, the court is left with Meyer's initial complaint that does not state a claim under the *Twombly* pleading standards. 550 U.S. at 570. Thus, Meyer's motion to correct defects (Docket 37) in the case is denied.

## CONCLUSION

Meyer has failed to state a claim upon which relief may be granted against Pennington County, the Pennington County State's Attorney Office, Mark Vargo, and the City of Rapid City. The Court does not have subject matter jurisdiction over Meyer's claims against Judge Pfeifle, Judge Brown, Judge Linngren, the State of South Dakota, the Office of the Attorney General, or Attorney General Jason Ravnsborg. Thus, it is ORDERED that

1. Defendants' motions to dismiss without prejudice (Dockets 13, 16, 18, and 20) are granted.

2. Defendants State of South Dakota, Office of the Attorney General, and

Jason Ravnsborg's motion for sanctions (Docket 26) is denied.

3. Meyer's motion for oral arguments and to correct defects in the case (Docket 37) is denied.

4. Meyer's motion to add defendants (Docket 35) is denied.

Dated March 14, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE